# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LEANDER CARTER, (#B09162), | ) |
| | ) |
| Petitioner, | ) |
| | ) Case No. 15 C 2969 |
| v. | ) |
| | ) |
| KURTIS HUNTER, Acting Warden, | ) |
| Shawnee Correctional Center, | ) |
| | ) |
| Respondent. | ) |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Before the Court is pro se Petitioner Leander Carter's petition for a writ of habeas corpus brought pursuant to 28 U.S.C. § 2254(d). For the following reasons, the Court denies Carter's habeas petition and declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).

## BACKGROUND

When considering habeas petitions, federal courts must presume the factual findings made by the last state court to decide the case on the merits are correct unless the habeas petitioner rebuts those findings by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Rhodes v. Dittmann,* 783 F.3d 669, 674 (7th Cir. 2015). Where Carter has not provided clear and convincing evidence to rebut this presumption, the following factual background is based on the Illinois Appellate Court's findings in *People v. Carter*, No. 1-01-4012 (1st Dist. May 13, 2003) (unpublished), and *People v. Carter*, No. 1-11-0905 (1st Dist. Dec. 20, 2013) (unpublished).

### I. Factual Background

At Carter's 2001 bench trial in the Circuit Court of Cook County, Basil McClain testified that on July 10, 2000, he was at his home in Blue Island, Illinois, entertaining his friends Franko

Bovino, Matthew Patoska, and Janoit Cameron. McClain testified that around 10:45 p.m. he was in his garage grilling food. When he reached down to take a beer out of a cooler and looked back up, a tall black man was standing in front of him with a badge and a gun. The man, who was later identified as Theodore Parrish, told McClain to "freeze" and "get down." Because McClain believed Parrish was a police officer, he got down on the ground and then noticed Donald Johnson, whom McClain knew, walk into the garage. McClain testified that Johnson put a gun to him, told him to lie on his chest, and handcuffed him. Trial testimony reveals that thereafter Carter walked into the garage holding a gun. McClain recognized Carter from seeing him in the neighborhood. When McClain saw Carter walk in to the garage, McClain shouted "don't do this. You don't know the situation." Carter then said "let's go." At that time, Johnson picked up McClain and then Johnson, Carter, and Parrish walked McClain through the alley next to the garage. Shortly thereafter, Johnson put McClain in the back seat of a Chevy Blazer and they drove away.

McClain's friends Bovino, Patoska, and Cameron also testified at Carter's 2001 bench trial corroborating McClain's testimony. Specifically, they testified that they saw three men enter the garage and that one man held a gun and told them to freeze. Bovino testified that he laid down on a couch with his head facing McClain, Cameron stated that he got down on the ground, and Patoska testified that the three men had guns and that the lighting in the garage allowed him to look directly into Carter's face for about 30 seconds to a minute. Further, Bovino testified that the man who walked toward McClain had a police badge around his neck. Patoska and Cameron testified that they heard the sound of handcuffs and McClain pleading. After the perpetrators left, Patoska ran home to call the police. Later, Patoska identified Carter

in a line-up.

Chicago police officers also testified at Carter's bench trial. In particular, an officer testified that he noticed an individual attempting to park a Chevy Blazer in the garage at 92nd and Dauphin Streets in Chicago, which was later identified as Carter's home. Once the police officers drove toward the Chevy Blazer, it sped off without its lights. The police followed the Chevy Blazer and eventually caught up to it finding only McClain inside. When the police found McClain, he was bound and blindfolded. McClain then told them that he had been kidnaped and that the men tried to kill him. Later, police officers responding to the backup call converged on Carter's home where they found Parish and Johnson. The officers also encountered Carter and told him to stop, after which he tried to run away. After shots were fired, the police then arrested Carter, who had been shot in the groin.

Relevant to the present habeas petition, Carter's brother and mother also testified at trial. Carter's mother specifically stated that Carter was home at 10:45 or 11 p.m. on the night of the kidnaping. Also, prior to trial, Carter represented himself, at which time he filed pro se filings disclosing an alibi witness named Cornelius Walters. Carter maintained that Walters was his employer and that he would verify that Carter worked until 10:45 p.m. the night of the kidnaping. When the State sought to subpoena information from Walters, an attorney informed the judge that Walters would not be an alibi witness and would assert his privilege against self-incrimination if necessary. In any event, at a subsequent pre-trial hearing, Walters testified under oath that he had no records showing whether Carter worked that night. Meanwhile, Carter hired counsel, who represented him at trial.

## II. Procedural Background

After the 2001 bench trial in the Circuit Court of Cook County, the Circuit Court judge found Carter guilty of two counts of kidnaping, two counts of aggravated kidnaping, four counts of aggravated unlawful restraint, and four counts of unlawful restraint. At a subsequent sentencing hearing, the Circuit Court sentenced Carter to a total term of twenty-five years in prison.

On direct appeal, Carter argued that: (1) the trial court erred in admitting the handgun, badge, police scanner, and cell phone recovered from his co-defendants at the time of his arrest; (2) the trial court erred by allowing witnesses to testify about previously identifying his co-defendants; and (3) his trial counsel was ineffective for failing to file a motion to quash his arrest and suppress evidence. The Illinois Appellate Court, First District, affirmed on May 13, 2003. The Supreme Court of Illinois denied Carter's petition for leave to appeal ("PLA") on December 3, 2003.

Carter then filed a pro se post-conviction petition pursuant to the Illinois Post-Conviction Hearing Act, 725 ILCS 5/122-1, *et. seq.*, in the Circuit Court of Cook County. Relevant to the present habeas petition, Carter argued that his trial counsel was constitutionally ineffective for failing to (1) provide timely notice that his mother would testify as an alibi witness and failing to prepare her for trial, and (2) investigate a potential alibi witness named Willie Earl Smith. In Smith's affidavit–supporting Carter's post-conviction petition–Smith averred that (1) he saw Carter near Carter's workplace around 10:40 p.m. on the night of the kidnaping, (2) he gave Carter a ride home beginning around 10:45 p.m., and (3) he dropped Carter off at his home around 10:50 p.m. Carter alleged that he told his counsel about Smith's alibi and that counsel

never contacted Smith. The post-conviction judge dismissed the petition without an evidentiary hearing.

On appeal from his post-conviction petition, Carter brought the following claims relevant to the present habeas petition: (1) trial counsel was constitutionally ineffective for failing to investigate and raise an alibi defense regarding Willie Earl Smith; and (2) trial counsel was ineffective for failing to properly investigate and prepare his mother and brother for trial. On December 30, 2013, the Illinois Appellate Court affirmed the trial court's dismissal of Carter's post-conviction petition. The Supreme Court of Illinois denied Carter's PLA–in which he raised the same ineffective assistance of trial counsel claims–on May 28, 2014.

## III. Habeas Petition

On April 1, 2015, Carter filed the present pro se petition for a writ of habeas corpus. Construing Carter's pro se allegations in his habeas petition liberally, *see Perez v. Fenoglio,* 792 F.3d. 768, 776 (7th Cir. 2015), he argues that his trial counsel was constitutionally ineffective for failing to (1) investigate and raise the Smith alibi; and (2) file a notice of alibi witness in relation to his mother and sufficiently prepare his mother as a witness.

**LEGAL STANDARD**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), the Court cannot grant habeas relief unless the state court's decision was contrary to, or an unreasonable application of federal law clearly established by the Supreme Court. *See Williams v. Taylor,* 529 U.S. 362, 402-03, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Corcoran v. Neal,* 783 F.3d 676, 682 (7th Cir. 2015). Clearly established federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to dicta, of the United States Supreme Court. *See White v. Woodall,* ___

U.S. ___, 134 S.Ct. 1697, 1702, 188 L.Ed.2d 698 (2014). The Supreme Court has explained that a state court's decision is "contrary to" clearly established Supreme Court law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours." *Williams,* 529 U.S. at 405.

Under the "unreasonable application" prong of the AEDPA standard, a habeas petitioner must demonstrate that although the state court identified the correct legal rule, it unreasonably applied the controlling law to the facts of the case. *See id.* at 407; *see also White,* 134 S.Ct. at 1702. To be sufficiently unreasonable, the state court's application of federal law must be more than incorrect, it must be "objectively unreasonable." *See Corcoran*, 783 F.3d at 683; *see also Williams*, 529 U.S. at 410 ("*unreasonable* application of federal law is different from an *incorrect* application of federal law") (emphasis in original). To be considered objectively unreasonable, a state court's decision must be "well outside the boundaries of permissible differences of opinion." *Corcoran,* 783 F.3d at 683 (citation omitted). In other words, as the Supreme Court teaches, to be objectively unreasonable, the state court ruling must be "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011).

## ANALYSIS

### I. Ineffective Assistance of Trial Counsel Claims

To establish constitutionally ineffective assistance of trial counsel in violation of the Sixth Amendment, Carter must show that (1) his trial attorney's performance "fell below an

objective standard of reasonableness," informed by "prevailing professional norms" and (2) "but for counsel's unprofessional errors the result of the proceeding would have been different." *Strickland v. Washington,* 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "To reflect the wide range of competent legal strategies and to avoid the pitfalls of review in hindsight, [the Court's] review of an attorney's performance is highly deferential and reflects a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Groves v. United States,* 755 F.3d 588, 591 (7th Cir. 2014) (citation omitted). To establish prejudice, it is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding," instead Carter must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Carter v. Butts,* 760 F.3d 631, 635 (7th Cir. 2014) (quoting *Strickland*, 466 U.S. at 693-94). If Carter fails to make a proper showing under one of the *Strickland* prongs, the Court need not consider the other. *See Strickland,* 466 U.S. at 697 ("a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant"); *Groves*, 755 F.3d at 591 (If petitioner "is unable to make a sufficient showing of one of the *Strickland* prongs, we need not consider the other."). Finally, as the Supreme Court teaches, because the "standards created by *Strickland* and § 2254(d) are both 'highly deferential,'" when "applying the two in tandem, review is 'doubly so.'" *Harrington,* 562 U.S. at 105 (citations omitted).

      Carter's first habeas claim is that his trial counsel was constitutionally ineffective for failing to investigate and raise the Smith alibi. In addressing this argument, the Illinois Appellate Court first considered Smith's affidavit in which he averred that (1) he saw Carter near

7

Carter's workplace around 10:40 p.m. on the night of the kidnaping, (2) he gave Carter a ride home around 10:45 p.m., and (3) he dropped Carter off at his home around 10:50 p.m. The Illinois Appellate Court reasoned that Smith's alibi testimony conflicted with the other proffered alibi testimony of Cornelius Walters, and that under the circumstances, counsel's decision to pursue a reasonable doubt defense did not constitute a deficient performance. In making this determination, the Illinois Appellate Court reviewed the trial record highlighting counsel's aggressive cross-examination of the State's witnesses focusing on the lack information about Carter's identification. Indeed, in his reply brief, Carter admits that counsel's cross-examination of the State's witnesses, including McClain and Patoska, was effective. (R. 14, Reply Brief, at 9.)

The Illinois Appellate Court's conclusion that trial counsel's strategy did not amount to a constitutionally deficient performance is supported by *Strickland's* teaching that "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (citation omitted). In fact, "it is always good strategy to avoid wasting time or the court's attention with claims that are going nowhere." *Peterson v. Douma*, 751 F.3d 524, 533 (7th Cir. 2014). Therefore, Carter has failed to establish that counsel's performance–as a whole–was deficient under the first *Strickland* prong, therefore, the Court need not consider whether counsel's trial strategy was prejudicial under the second *Strickland* inquiry. *See Groves*, 755 F.3d at 591. The Court thus denies Carter's ineffective assistance of counsel claim based on the Smith alibi.

As to Carter's second habeas claim, namely, that his trial counsel provided constitutionally ineffective assistance of counsel in relation to counsel's preparation of his mother (and brother) for trial and failed to file a timely alibi notice as to his mother, Carter provided their affidavits to the Illinois post-conviction trial court. In his mother's affidavit, she averred that defense counsel never questioned her or informed her that she would testify at Carter's trial, although both Carter's brother and mother did testify at trial. When concluding that counsel was not constitutionally ineffective under *Strickland*, the post-conviction Illinois Appellate Court explained:

> The record from trial does not support defendant's claim that his attorney was ineffective for failing to prepare his mother and brother for trial. There is nothing in the affidavits from both witnesses that was not introduced at trial. Nothing in the record indicates that trial counsel was unaware or ill-prepared regarding what either witnesses's testimony would be. The affidavits do not contain any exonerating evidence or other alibi evidence that was not presented at trial. Accordingly, defendant has not show how his defense counsel's representation was deficient when the statements in the affidavits were introduced at trial. Additionally, defendant cannot establish any prejudice because the proposed testimony from the affidavits was actually testified to by both [Carter's mother and brother].

(*Carter*, No. 1-11-0905, ¶ 35.)

Not only did the Illinois Appellate Court conclude that counsel's performance was not constitutionally deficient, the Illinois Appellate Court reasoned that Carter could not establish prejudice under the second prong of the *Strickland* analysis because–despite counsel's failure to provide timely notice that his mother would testify as an alibi witness or counsel's alleged failure to prepare his mother–his mother did testify at trial stating that Carter was at home at the time of the kidnaping. Therefore, Carter has not demonstrated "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *See*

9

*Strickland,* 466 U.S. at 694. Consequently, Carter has failed to show that the Illinois Appellate Court's decision was objectively unreasonable because it was not "so lacking in justification" that it is "beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103. The Court therefore denies Carter's ineffective assistance of counsel claim in regard to his mother's testimony and notice of alibi.

## II.     Certificate of Appealability

Under the 2009 Amendments to Rule 11(a) of the Rules Governing Section 2254 Proceedings, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Accordingly, the Court must determine whether to grant Carter a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2) in the present order. *See Gonzalez v. Thaler,* ___ U.S. ___, 132 S.Ct. 641, 649 n.5, 181 L.Ed.2d 619 (2012).

A habeas petitioner does not have the absolute right to appeal a district court's denial of his habeas petition, rather, he must first request a certificate of appealability. *See Miller-El v. Cockrell,* 537 U.S. 322, 335, 123 S.Ct. 1029, 1039, 154 L.Ed.2d 931 (2003); *Peterson v. Douma,* 751 F.3d 524, 528 (7th Cir. 2014). A habeas petitioner is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right. *See Miller-El,* 537 U.S. at 336; 28 U.S.C. § 2253(c)(2). Under this standard, Carter must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El,* 537 U.S. at 336 (quoting *Slack v. McDaniel,* 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000)).

Here, Carter has not established reasonable jurists would debate that the Court should have resolved his ineffective assistance of trial counsel claims in a different manner, especially in light of the fact that there is a strong presumption that trial counsel's performance falls within the wide range of reasonable professional assistance. *See Groves,* 755 F.3d at 591. Therefore, the Court declines to certify any issues for appeal. *See* 28 U.S.C. § 2253(c)(2).

## CONCLUSION

For these reasons, the Court denies Carter's petition for a writ of habeas corpus and declines to certify any issues for appeal. *See* 28 U.S.C. §§ 2253(c)(2), 2254(d).

**Dated:** September 14, 2015

ENTERED

**AMY J. ST. EVE**
**United States District Judge**